UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| DUPONT WATER COMPANY INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 4:23-cv-00041-SEB-KMB |
| CITY OF MADISON, INDIANA, | ) |
| Defendant. | ) |
| JEFFERSON COUNTY, INDIANA, | ) |
| Intervenor. | ) |

**ORDER ON MOTIONS TO DISMISS**

This case involves a territorial dispute over water utility service in the City of Madison, Indiana. Plaintiff Dupont Water Company, Inc. ("Dupont") has brought this action against Defendant City of Madison ("Madison" or the "City") under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, alleging that the City has been providing water to Jefferson County, Indiana ("Jefferson County" or the "County"), as well as to another user who is not a party to this litigation, in violation of Dupont's exclusive monopoly to provide water pursuant to 7 U.S.C. § 1926. Dupont seeks damages from the City for the alleged encroachment and a declaratory judgment that the City's actions violate § 1926.

Jefferson County intervened in this litigation, seeking a declaratory judgment that its agreement to receive water services from the City is legal; it also seeks to recover any damages it may incur as a result of Dupont's interference with that agreement. In

1

response to the County's intervenor complaint, Dupont filed a counterclaim under § 1983 and § 2201, alleging that the County's agreement to receive water services from the City also violates its rights under § 1926(b) and seeking a declaratory judgment to that effect, damages for lost revenue, and an injunction prohibiting the County from continuing to receive water service from the City.

Now before the Court are the City's Motion to Dismiss Dupont's complaint [Dkt. 12] and the County's Amended Motion to Dismiss Dupont's counterclaim [Dkt. 54], both filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons detailed below, we <u>GRANT IN PART</u> and <u>DENY IN PART</u> the City's motion and <u>DENY</u> the County's motion.

## **Factual Background**

Approximately thirty years ago, the United States Department of Agriculture ("USDA") lent Dupont money under 7 U.S.C. § 1926(a) to find the construction of a water supply distribution system, and, shortly thereafter, Dupont entered into a contract with Madison to purchase water from the City.  Since that time, Dupont and the City have amended their water purchase agreement three times—on June 8, 1993 (the "1993 Amendment"), October 7, 2003 (the "2003 Amendment"), and January 17, 2007 (the "2007 Amendment").  The 1993 Amendment extended the term of the water purchase agreement through June 30, 2033.  The 2003 Amendment increased the amount of water Dupont was contractually permitted to purchase from the City to twelve million gallons of water per month.  The 2007 Amendment increased Dupont's monthly purchase allotment to fifteen to eighteen million gallons of water and also included a provision

2

permitting the City to provide water services directly to certain users based on their locations and water needs.  That specific provision provides as follows: "Dupont Water does agree to permit Madison to assume responsibility for serving two water users at the southeast corner of Wilson Avenue and Hutchinson Lane and to allow Madison to serve industrial users north of Hutchinson Lane and into the Jefferson Proving Ground if such users require sprinkler systems or are large water users."  Dkt. 1-5 at 2.

In September 2021, Jefferson County purchased property in Madison, Indiana to construct its new jail (the "Jail").  The Jail's location—1150 J.A. Berry Lane—is within Dupont's service area.  Compl. ¶¶ 20, 21.  During construction, the County began receiving water service at the Jail from Dupont.  *Id.* ¶ 23.  Dupont alleges that, although it has "adequate pipes in the immediate vicinity" and "the capability to provide the Jail when fully constructed with water service for both consumption and fire suppression," it learned in late 2022 that the City had offered to provide water service to the Jail.  *Id.* ¶¶ 21, 24, 25.

On January 24, 2023, Dupont informed Madison by letter that, in seeking to provide water services to Jefferson County for the Jail, the City was "curtailing or encroaching on the [federally-protected service territory] Dupont serves" in violation of § 1926(b).  The City responded on February 10, 2023, stating that it intended to supply the Jail's water needs and that did not believe it was violating federal law in doing so because: (1) Dupont had never responded to Jefferson County's inquiries regarding providing water service for the Jail; (2) Dupont lacked adequate infrastructure to serve the Jail; and (3) the 2007 Amendment permitted the City to provide service to the Jail.

3

Compl. ¶¶ 27, 29, 31, 33.  The complaint before us alleges that each of these statements is erroneous and that the City is not permitted to service the Jail under the 2007 Amendment because the Jail is not an industrial user.  *Id.* ¶ 34.

In February or March 2023, the City installed a water line around Dupont's water main and "hooked up to the Jail to serve it."  *Id.* ¶¶ 21, 24, 35.  The complaint alleges that, also in March 2023, Dupont received notice that Madison was running a water line around Dupont's water main to connect to and provide water to River City Printing LLC ("River City"), which, like the Jail, is located within Dupont's service area.

On March 17, 2023, Dupont filed the instant lawsuit against the City, under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, alleging that the City has been providing water to Jefferson County and River City Printing in violation of Dupont's exclusive, lawful monopoly to provide water under 7 U.S.C. § 1926.  The County filed its intervenor complaint approximately one year later, on February 16, 2024, and Dupont filed a counterclaim against the County, under § 1983 and § 2201, alleging that the County's agreement to receive water services from the City also violates Dupont's rights under § 1926(b) and that the County conspired with the City to violate Dupont's rights.  The City's motion to dismiss Dupont's complaint and the County's motion to dismiss Dupont's counterclaim are both briefed and ripe for ruling.

## Legal Analysis

I.  **Applicable Legal Standard**

Madison and Jefferson County have filed their motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  In this procedural context, the Court must

4

accept as true all well-pled factual allegations in the complaint and draw all ensuing inferences in favor of the non-movant. *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009). Nevertheless, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must . . . raise a right to relief above the speculative level." *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted). The complaint must therefore include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see* Fed. R. Civ. P. 8(a)(2). Stated otherwise, a facially plausible complaint is one which permits "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II.  City of Madison's Motion to Dismiss

The City has moved to dismiss the complaint arguing that Dupont has failed to allege sufficient facts to state a claim. Specifically, the City maintains that Dupont's declaratory judgment claim cannot survive dismissal because Dupont has failed to adequately allege that it has an ongoing debt to the USDA as is required in order to qualify for the protections of § 1926, and has also failed to allege sufficient facts to support a plausible inference that the City has curtailed or limited Dupont's service area. The City seeks dismissal of Dupont's § 1983 claim in addition because Dupont has not adequately plead that its alleged injury was caused by a custom, policy, or decision by a final policymaker of the City as is required for municipal liability to arise under the statute. We address each of these arguments in turn below.

### A. Declaratory Judgment Claim

Section 1926(a) empowers the USDA "to make or insure loans and to award grants to associations (including not-for-profit corporations and public agencies) to provide water or waste disposal facilities in rural communities." *Brown Cnty. Water Utility, Inc. v. Town of Nashville, Ind.*, No. 1:17-cv-02134-TWP-TAB, 2019 WL 2123461, at *6 (S.D. Ind. May 15, 2019). The claims at issue in this litigation are based on § 1926(b), which provides in relevant part that "[t]he service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body …." 7 U.S.C. § 1926(b). "The purposes of § 1926(b) are to encourage rural water development and to safeguard the interest of the United States in having its loans repaid." *Jennings Water, Inc. v. City of N. Vernon, Ind.*, 682 F. Supp. 421, 426 (S.D. Ind. 1988) (citation omitted).

To establish a violation of § 1926, a plaintiff must show that (1) it is rural water association within the meaning of the statute; (2) it has a qualifying outstanding loan obligation; (3) it has provided or made service available to the disputed area; and (4) a competing entity curtailed or limited service in the area to which the plaintiff was providing service or making service available. *Brown Cnty. Water Util.*, 2019 WL 2123461, at *7. Here, the City argues that Dupont's declaratory judgment claim cannot survive dismissal because Dupont has failed to adequately allege either that it has a "qualifying outstanding loan obligation" to the United States or that the City "curtailed or limited" Dupont's service area.

6

To obtain protection under § 1926(b), "a water district must have … a continuing indebtedness to the USDA …." *Rural Water Dist. No. 4, Douglas Cnty., Kan. v. City of Eudora, Kan.*, 659 F.3d 969, 976 (10th Cir. 2011). This means, an entity invoking the protections of § 1926(b) "must show that at the time of the curtailment of its service[,]" it was federally indebted. *Santa La Hill Inc. v. Koch Dev. Corp.*, No. 3:07-cv-00100-RLY-WGH, 2008 WL 140808, at *4 (S.D. Ind. Jan. 11, 2008) (citations omitted). According to the City, Dupont's allegation that, approximately thirty years ago, "[t]he United States Department of Agriculture *lent* [it] money … to construct Dupont's system," (Dkt. 1 ¶ 8 (emphasis added)), is insufficient to support the inference that Dupont *currently* remains federally indebted, to support its claims that its service is presently being curtailed by the City. Although the complaint elsewhere affirmatively alleges that Dupont "has a qualifying outstanding loan under 7 U.S.C. § 1926(a)," the City contends that this is merely a legal conclusion and the rote recitation of an element of the claim which "is not entitled to [a] presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

We are not persuaded by the City's argument. As the Seventh Circuit recently reiterated, "federal courts require notice pleading, not fact pleading complete with all the minutiae. A complaint need only provide notice of a plausible claim; there is no rule requiring parties to plead legal theories or elements of a case." *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 942 (7th Cir. 2020) (quotation marks and citations omitted). Here, Dupont has alleged that the USDA "lent" it money to construct its water supply distribution system and that its loan is "outstanding." Additionally, the exhibits

7

attached to and referenced in Dupont's complaint, which include recent communications between Dupont and the City, reference the fact that Dupont is "a federally indebted rural association for purposes of federal law," (Dkt. 1-7 at 1), and that it "owe[s] a debt to the federal government that is still outstanding." Dkt. 1-6.  These facts, after drawing reasonable inferences in Dupont's favor, are sufficient at this early stage of the litigation to render it "plausible" that Dupont is currently federally indebted.  *See Taha v. Int'l Bhd. of Teamsters, Loc. 781*, 947 F.3d 464, 469 (7th Cir. 2020) ("A claim satisfies Rule 8(a)(2)—and avoids dismissal under Rule 12(b)(6)—if the complaint alleges facts that show the claim is 'plausible on its face.'") (citation omitted).  If subsequent discovery reveals otherwise, a motion for summary judgment will no doubt follow.

The City next argues that Dupont has not alleged sufficient facts to render plausible its claim that the City "curtailed or limited" Dupont's service area by providing water to the Jail and River City as is required to establish a violation of § 1926(b). Specifically, the City argues that, because the 2007 Amendment provides that the City may service "industrial users" within Dupont's service area if those entities require sprinkler systems or are large water users, Dupont's failure to allege facts sufficient to support an inference that the Jail and River City are not "industrial users" renders implausible Dupont's claim that the City's provision of water service to those entities violates § 1926(b).

Again, we are not persuaded by the City's argument, for the following reasons. The complaint alleges that the Jail and River City Printing are both located within Dupont's water service area and that, although Dupont is willing and able to provide the

8

water services those entities need, the City has run water lines around Dupont's water main in order to provide them water. To survive dismissal of the complaint, Dupont need only provide "*some* specific facts to support the legal claims asserted in the complaint." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021) (internal quotation marks omitted) (emphasis added). This is not a high bar and these facts alleged by Dupont are sufficient to satisfy the Rule 12(b)(6) standard and plausibly allege that the City is "curtail[ing] or limit[ing]" its service area in violation of § 1926(b).

Whether the City may have a meritorious argument that its actions do not violate § 1926 because the Jail and River City Printing qualify as "industrial users" as that term is used in the 2007 Amendment and the City is therefore contractually permitted to provide them water service is an issue that must be resolved after the complaint stage based on a more fully developed factual record. The term "industrial user" is not defined in the 2007 Amendment and the parties put forth various arguments in their briefing as to the proper definition of the term. While the City contends that, under its preferred definition, "both the Jail and River City would likely be considered 'industrial users,'" (Dkt. 15 at 2), it is beyond our purview on a motion to dismiss to analyze and weigh evidence in order to determine which definition would be more reasonable to apply and whether the Jail and River City Printing come within that definition.

For these reasons, Dupont's declaratory judgment claim survives dismissal.

### B. § 1983 Claim

The City has also moved to dismiss Dupont's claim brought against it pursuant to § 1983, which statute imposes liability on any "person" who, while acting under color of

9

state law, violates an individual's federally protected rights. 42 U.S.C. § 1983. Local governments and municipalities may be held liable under § 1983, only "when execution of a government's policy or custom … inflicts the injury." *Houskins v. Sheahan*, 549 F.3d 480, 493 (7th Cir. 2008) (quotation marks and citation omitted). A plaintiff can show that a violation of its federally protected rights resulted from the execution of a municipal policy or custom in the following three ways: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Chortek v. City of Milwaukee*, 356 F.3d 740, 748 (7th Cir. 2004)). Additionally, "a municipality may be held liable based on a ratification theory." *Waters v. City of Chicago*, 580 F.3d 575, 584 (7th Cir. 2009) (citations omitted). "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

The City argues that Dupont's § 1983 claim must be dismissed because its complaint makes no reference to its injury having been caused by any alleged policy or custom of the City nor does it identify any City official who is allegedly responsible for the decision to provide water service to the Jail and River City Printing, much less that the official responsible is a final policymaker. Our analysis confirms that the complaint is devoid of any allegation or fact that would support a plausible inference that City

10

employees followed an express policy or widespread custom in deciding to provide water service to the Jail and River City Printing.

While it is true that a municipal policy can also be established through the "single act or decision of a final policymaker," *Branson v. Newburgh Police Department*, 849 F. Supp. 2d 802, 811–12 (S.D. Ind. 2011) (quotation marks and citation omitted), Dupont's complaint fails to include sufficient factual allegations to allow the Court to determine that a final policymaker either made the decision to serve the Jail and River City Printing or ratified a non-policymaking employee's decision to do so. The complaint and documents attached thereto state only that "Madison" made the decision but omit any factual allegations regarding the identity of the decisionmaker(s) or the process by which the decision was made and approved. In the absence of any such well-pleaded facts, Dupont has "fail[ed] to outline the grounds upon which the *Monell* claim rests." *Gray v. Canton Township*, No. 19-1184, 2019 WL 5457817, at *3 (C.D. Ill. Oct. 24, 2019).

For these reasons, Dupont's § 1983 claim against the City must be dismissed, but without prejudice.

### III. Jefferson County's Motion to Dismiss

As discussed above, Jefferson County intervened in this action seeking a declaration that its agreement with the City to receive water services for the Jail does not violate § 1926 and to recover any damages that it may incur as a result of Dupont's interference with that agreement. In response to Jefferson County's intervenor complaint, Dupont filed a counterclaim under § 2201 and § 1983, alleging that the County's contracting with the City to receive water service at the Jail violates § 1926(b), and that,

11

in negotiating that agreement, the County unlawfully conspired with the City to violate Dupont's federal rights. The County seeks dismissal of Dupont's counterclaim, arguing, first, that Dupont cannot establish that the County was a "competing entity" engaged in "curtailing or limiting" Dupont's water service, as is required to allege a violation of § 1926(b), and second, that Dupont's *Monell* claim fails to allege that its injuries were caused by a County policy. We shall address these arguments next.

### A. Declaratory Judgment Claim

As set forth above, § 1926(b) prohibits the service of a rural water association to be "curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body, or by the granting of any private franchise for similar service within such area during the term of such loan." 7 U.S.C. § 1926(b). The Seventh Circuit Court of Appeals has recognized that "[t]he statute's legislative history confirms that the Congress intended a broad reading for section 1926(b)." *Jennings Water*, 895 F.2d at 315.

Jefferson County argues that Dupont's counterclaim seeking a declaration that the County violated Dupont's rights under § 1926(b) by agreeing to receive water service from the City must be dismissed because only a "competing entity" can be found to have violated § 1926(b), and "[n]ot a single case has ever construed the statute as permitting a claim against a water customer" such as the County. Dkt. 55 at 3. It is true that the case law relating to this statute primarily involves curtailments by competing municipal water *servicers* not water customers. *See, e.g., Jennings Water*, 895 F.2d at 315 (holding that "curtailment" under § 1926(b) encompasses municipal "encroachment by means of

12

expanding its water sales to consumers located within the rural association's territory"); *CSL Utilities, Inc. v. Jennings Water, Inc.*, 16 F.3d 130, 137 (7th Cir. 1993) (holding that § 1926(b) is "aimed at suppressing competition with a supplier endowed with public funds"). The federal regulations interpreting this statute likewise recognize that, without the protections of § 1926(b), "other entities *could extend service* to users within the service area, and thereby undermine the purpose of the congressionally mandated water and waste loan and grant programs and jeopardize the borrower's ability to repay its Agency debt." 7 C.F.R. § 1782.14 (emphasis added).

However, while these cases do not specifically address whether a water customer that is a municipal corporation[1] can be sued for violating § 1926(b) by contracting with another water servicer to purchase water within a rural association's territory, in the case of *CSL Utilities*, the court described the holding of *Jennings Water* as follows: "[an] entity purchasing water from [a] rural association cannot contract with [a] municipality to replace [the] association as its supplier of water." *CSL Utilities*, 16 F.3d at 135. Additionally, in *Adams County Regional Water District v. Village of Manchester*, 226 F.3d 513 (6th Cir. 2000), a federally indebted utility sued two villages—one of which was its water customer—for violating § 1926(b). In *Adams County*, the water district plaintiff "provided wholesale water" to the village of West Union. *Id.* at 515. West Union then "commenced plans to develop an alternative water supply" from the second village, Manchester, "by constructing a water line from West Union to Manchester." *Id.*

---

[1] There appears to be no dispute that Dupont's counterclaim adequately alleges that Jefferson County is a municipal corporation.

13

at 516.  The water district sued both villages for violations of its § 1926(b) rights and the Sixth Circuit, citing *Jennings Water*, held that "West Union's contracting with Manchester for additional water supplies constitute[d] an encroachment in violation of § 1926(b)." *Id.* at 520.  The Sixth Circuit found that both the water district's customer (West Union) and the competing supplier (Manchester) violated § 1926(b) by contracting for water service, because their contract curtailed the area served by the federally-indebted water district.

Although not binding precedent here, we find the Sixth Circuit's ruling in *Adams County* persuasive and instructive.  Given the Seventh Circuit's stated emphasis that § 1926(b) is to be read broadly, and that neither party before us has cited any case or other legal authority definitively holding that no private right of action exists against a public water customer for an alleged violation of § 1926(b), we hold that Dupont's declaratory judgment counterclaim, which alleges that Jefferson County entered into an agreement with the City of Madison to purchase water within Dupont's service area, states a plausible claim for relief and survives dismissal at this juncture.

### B. § 1983 Claim

Jefferson County next argues that Dupont's § 1983 counterclaim must be dismissed because it lacks any allegation that the County "had any express policy that caused a constitutional deprivation."  Dkt. 55 at 6.  As discussed in detail above, a plaintiff can show that a violation of its federally protected rights resulted from the execution of a municipal policy or custom in the following three ways: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom

14

or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." *Walker*, 526 F.3d at 977 (citing *Chortek*, 356 F.3d at 748). "[A] single act or decision of a final policymaker can establish municipal policy." *Branson*, 849 F. Supp. 2d at 811–12 (internal quotation marks and citation omitted).

Dupont's counterclaim alleges that "[t]he vote by Jefferson County's Council to receive water service from Madison—despite being warned that this violates § 1926(b)—constitutes an official policy of Jefferson County." Dkt. 50 at 14, ¶ 58. Indiana law provides that the County Council "is the county fiscal body," Indiana Code § 36-2-3-2(a), and "Indiana's statutory scheme gives fiscal decisionmaking authority to the Council…." *Shoppell v. Schrader*, No. 1:08-CV-284 PS, 2009 WL 523150, at *3 (N.D. Ind. Mar. 2, 2009). Accordingly, we find that Dupont's allegations that the Jefferson County Council voted to receive water service from the City and that that agreement was the cause of Dupont's injury are sufficient to plausibly allege a municipal policy as is required to state a *Monell* claim under § 1983. This claim, too, survives dismissal.

IV.     **Conclusion**

For the reasons detailed above, Defendant City of Madison's Motion to Dismiss [Dkt. 12] is <u>DENIED IN PART</u> as to Plaintiff's declaratory judgment claim and <u>GRANTED IN PART</u> without prejudice as to Plaintiff's claim brought pursuant to § 1983. Intervenor Jefferson County's Amended Motion to Dismiss [Dkt. 54] Plaintiff's counterclaim is <u>DENIED</u>.

15

If Plaintiff wishes to amend its complaint to cure the deficiencies addressed herein, it must do so within <u>thirty (30) days</u> of the date of this Order. Otherwise, this case shall proceed accordingly.

       IT IS SO ORDERED.

Date:   9/30/2024

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Bradley M. Dick
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
bdick@boselaw.com

Tristan Carl Fretwell
TAFT STETTINIUS & HOLLISTER LLP
tfretwell@taftlaw.com

Manuel Herceg
TAFT STETTINIUS & HOLLISTER LLP (Indianapolis)
mherceg@taftlaw.com

J. Christopher Janak
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
jjanak@boselaw.com

R. Patrick Magrath
ALCORN SAGE SCHWARTZ MAGRATH LLC
magrath@advocatelawoffices.com